**UNITED STATES**

**v.**

**Captain Eddie W. SHELTON, 373–44–8523 FR, United States Air Force.**

**ACM 26022.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 26 Jan. 1987.

Decided 15 June 1988.

Appellate Counsel for the Appellant: Jan Horbaly, Horbaly & Young, Washington, D.C.; Colonel Leo L. Sergi and Lieutenant Colonel Patrick C. Sweeney.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Captain Jeffrey H. Curtis.

Before FORAY, MICHALSKI and MURDOCK, Appellate Military Judges.

## DECISION

FORAY, Senior Judge:

At his trial by general court-martial with members, the accused was convicted, pursuant to his pleas, of two offenses of fraternization and one offense of false swearing, in violation of Article 134, U.C.M.J., 10 U.S.C. § 934. The approved sentence extends to a dismissal and confinement for fifteen months.[1]

One of appellant's complaints on appeal is:

THE COURT–MARTIAL WHICH TRIED THE ACCUSED LACKED JUR-ISDICTION BECAUSE IT WAS IM-PROPERLY CONVENED.

The gravamen of the complaint is that the general court-martial convening authority, Major General Baker, directed that charges against appellant be nominally signed and sworn to by another. According to appellant this direction by the convening authority made him the "accuser" in the case as defined by Article 1(9), U.C.M.J., 10 U.S.C. § 801(9), and, as accuser, he was not authorized to order the charges against the appellant tried by general court-martial. Article 22(b), U.C.M.J., 10 U.S.C. § 822(b) says appellant, required General Baker to forward the charges to his "superior competent authority", the "CINCUSAFE",[2] for the convening of any court-martial. Thus, according to appellant, one of the five requisites of court-martial jurisdiction set forth in R.C.M. 201(b), i.e., the court-martial must be convened by an official empowered to convene it, has not been satisfied in this case. As a relief from this jurisdictional defect, he prays we set aside all the charges against him.

At the trial the military judge denied appellant's motion regarding this aspect of relief based on the following factual matters which were before him.

On 12 December 1985, General Baker, by letter, had advised all his subordinate commanders that only those commanders who are general officers or have authority to convene general courts-martial may impose nonjudicial punishment pursuant to Article 15, U.C.M.J., on officers within his command.

Sometime during early August 1986, Colonel Plescha, appellant's group commander, and Colonel Brunetti, the appellant's squadron commander, were briefed by staff members concerning certain allegations of fraternization by appellant with female members of his unit. Shortly thereafter, Colonel Plescha advised General Bak-

---

1. The sentence was adjudged on 26 January 1987, the sentence to confinement was deferred that same date, and the deferment terminated on 15 February 1987. The convening authority approved the adjudged findings and sentence on 20 April 1987. On 20 October 1987, by order of the Secretary of the Air Force, the sentence to dismissal and confinement remaining after 1 December 1987, was remitted.

2. Commander in Chief, United States Air Forces, Europe.

er regarding the alleged misconduct on the part of appellant. On 19 August Lieutenant Colonel Wiggens was appointed to conduct an investigation pursuant to A.F.R. 120-4 [3] into appellant's alleged misconduct. This investigation was completed on 29 August. Shortly thereafter, Colonel Plescha informed General Baker that he would recommend that any allegations against appellant be disposed of nonjudicially under the provision of Article 15, U.C.M.J., to be imposed by General Baker, and that appellant be allowed to retire from active duty.[4] At this point General Baker concurred in Colonel Plescha's initial recommendations but conditioned his concurrence upon review of all the relevant facts being collected regarding the allegations against appellant.

On 8 September Colonel Plescha signed an Air Force Form 3071, Record Of Recommended Nonjudicial Punishment Proceedings, recommending that General Baker impose nonjudicial punishment upon appellant for one offense of being derelict in the performance of duties and one offense of fraternizing with a female enlisted member of his unit, in violation of Articles 92 and 134, 10 U.S.C. §§ 892, 934 respectively. On that same day, the appellant signed the Air Force Form 3071 acknowledging his understanding of his rights in the matter and electing to waive his right to demand trial by court-martial and accept nonjudicial punishment proceedings.

On 15 September, Colonel Plescha became aware of additional evidence regarding another act of misconduct on the part of appellant. This evidence was provided to him in the form of a statement given by a female member of appellant's unit in which she admitted to having engaged in sexual intercourse with appellant. After receipt of this new evidence, Colonel Plescha withdrew his 8 September recommendation for nonjudicial punishment. He then, on 15 September, signed another Air

Force Form 3071 again recommending to General Baker that the accused be punished nonjudicially. This time he recommended appellant be punished for the offense of fraternization with a female enlisted member of his unit by engaging in sexual intercourse with that member as well as for the two offenses delineated in the 8 September Air Force Form 3071. On 18 September, appellant signed this Air Force Form 3071 again acknowledging his rights in the matter and electing to waive his right to demand trial by court-martial and accept nonjudicial punishment. Shortly thereafter, Colonel Plescha received a telephone call from General Baker advising Colonel Plescha that he was aware of additional misconduct on the part of appellant and, as a result, believed a court-martial was a more appropriate means of punishment for appellant rather than nonjudicial punishment. By letter, dated 29 September, General Baker notified Colonel Plescha, confirming his view that because of the alleged additional misconduct, imposition of nonjudicial punishment on appellant for the offenses alleged was "no longer appropriate".

The original charges [5] upon which appellant was tried were preferred against him on 28 October 1986, by Colonel Brunetti. Prior to the preferral of charges in the case, Colonel Brunetti was told by Major Roberts, the base staff judge advocate, that General Baker had determined that there would be a court-martial and that Colonel Brunetti, as appellant's supervisor, was to act as the accuser. As a result of this meeting with Major Roberts, Colonel Brunetti was under the impression that he was being directed to prefer the charges in the case by General Baker. Colonel Brunetti testified, "I was told that the boss told me to sign as the accuser or instructed me, however you want to phrase it." Colonel Brunetti also testified that prior to receiving the instruction from General Baker to

---

3. Air Force Regulation 120-4, Procedural Guide For Administrative Inquiries And Investigations, 23 December 1981.

4. Colonel Plescha was not authorized to impose nonjudicial punishment upon officers within his command.

5. An additional charge was preferred against appellant by Colonel Brunetti on 12 January 1987.

prefer the charges in the case he had no intention to do so.

Upon completion of the Article 32 Investigation in the case, Colonel Plescha, on 12 December, forwarded the Article 32 Report of Investigation, the charge sheet, and his recommendation as to disposition of the charges to General Baker for his action as convening authority. In his letter transmitting the case file, Colonel Plescha recommended that General Baker refer the case to a general court-martial. During the litigation of the issue now before us, Colonel Plescha testified that his initial recommendation concerning nonjudicial punishment and voluntary retirement of appellant "hasn't changed to this day". He was then asked by trial defense counsel what he meant in his letter forwarding the report of investigation and charges to General Baker when he recommended the charges preferred against the appellant be tried by general court-martial. To this, Colonel Plescha answered:

> That means I was the arbiter. I was saluting smartly and signing where I was supposed to sign in order to let the legal paper reflect on what the desires of my boss were.

Some of the findings reached by the military judge to support his denial of the motion regarding the issue before us are:

> There is no evidence to suggest a personal interest on the part of General Baker in his decision not to impose Article 15 punishment and proceed to trial by court-martial.

> The actions taken by Colonels Brunetti and Plescha, though with high regard for the expressed intent of General Baker to dispose of the case by court-martial, were, nonetheless, discretionary and not controlled by him. Because General Baker did not have a personal interest in the matter or an interest which reasonably transcends official action, he did not become an accuser by expressing his intent that the charges be resolved by a court-martial, he did not have other than an official interest in the matter.

Appellate government counsel agree with the military judge's findings and also contend that General Baker did not direct that Colonel Brunetti nominally sign and swear to the charges against the accused and that General Baker had nothing other than an official interest in the prosecution of the accused.

We must now determine whether General Baker was an accuser in this case and, therefore, disqualified to act as the authority ordering the charges preferred against the appellant to trial by general court-martial.

According to Article 1(9), U.C.M.J., an "accuser":

> ... means a person who signs and swears to charges, any person who directs that charges nominally be signed and sworn to by another, and any person who has an interest other than an official interest in the prosecution.

Articles 22(a) and 23(a), U.C.M.J., 10 U.S.C. § 823(a), authorize certain commanders to convene general and special courts-martial, respectively. However, pursuant to Articles 22(b) and 23(b) if any such commander is an accuser as defined in Article 1(9), "the court shall be convened by superior competent authority, ...". *See also* R.C.M. 307(a), Discussion.

Our research reveals that the Court of Military Appeals has seldom been called upon to decide the precise issue which is now before us. The case of *United States v. Corcoran*, 17 M.J. 137 (C.M.A.1984), was one such occasion. Corcoran was convicted by a special court-martial of various offenses including willful disobedience of a superior commissioned officer. The convening authority was the person who directed a subordinate officer to "write up [Corcoran] for disobeying a direct order" which was an order he, the convening authority, initially suggested be issued. Additionally, one of the charges against Corcoran, which was withdrawn prior to trial, was making a threat to that same person. The Court found a strong indication that the convening authority was an accuser within the meaning of Articles 23(b) and 1(9) by not only directing a subordinate to "write up" Corcoran, but by initially suggesting the order, which was violated, be

issued. The Court found the convening authority to be the accuser in parallel ways: first, by directing a subordinate to nominally sign and swear to the charges, and, second, by having an interest other than an official interest in the prosecution of Corcoran. Having found the court-martial improperly convened, the Court set aside the findings and sentence and dismissed the charges in the case.

In an earlier decision, *United States v. Smith*, 8 U.S.C.M.A. 178, 23 C.M.R. 402 (1957), the question the Court of Military Appeals had before it was "as a matter of law, was the convening authority an accuser under the circumstances of this case?" In *Smith*, the victim preferred the charge of larceny in the case and the convening authority, when referring that charge to trial, directed the trial counsel to amend the specification alleging larceny to one alleging robbery. The Court set forth the definition of an accuser found in Article 1(11) and said that the second part of the codal definition of an accuser "need not detain us long". The Court noted that this disability occurs when the charges are signed nominally by another at the direction of the convening authority. The Court then said:

> We suppose that implicit in that disqualification is the theory that one cannot escape his personal interest in a charge by directing another to formalize the pleadings.

However, under the circumstances of the case, the Court did not find the convening authority to be an accuser.

■ It has been a basic principle dating from the early Articles of War to the present that an accuser may not appoint the court that tries an accused. *United States v. Corcoran, supra*. For example, prior to the enactment of the Uniform Code of Military Justice, Article of War 8 designated those commanders who were empowered to appoint general courts-martial. The Article also provided that "when any such commander is the accuser or the prosecutor of the person or persons to be tried, the court shall be appointed by superior competent authority,...." M.C.M., U.S.

Air Forces, 1949, paragraph 60, implemented Article 8, 10 U.S.C. § 808 and defined an accuser as an officer who signed and swore to the charges in a particular case. The paragraph went on to state that although such person is ordinarily the only accuser in the case, that is not always true. Paragraph 60 then directs attention to paragraph 5*a* of the Manual and the notes in Appendix 2 under Article of War 4.

Paragraph 5*a* states, in pertinent part, that whether the commander who convened the court is the accuser in the case is mainly to be determined by his personal feeling or interest in the matter and an accuser either originates the charge or adopts and becomes responsible for it. Paragraph 5*a* also states that action by a commander which is merely official and in the strict line of his duty would not be sufficient to have him considered an accuser and, thus, disqualify him as an appointing authority.

The relevant note in Appendix 2 under Article 4 reveals that if the one who personally originates or drafts charges or causes them to be preferred nominally by another for him with the purpose of having the charges tried by court-martial, he is properly the accuser even though he may occupy no hostile or adverse position toward the accused.

In *United States v. Steed*, ACM 3476, 4 CMR(AF) 522, an Air Force Board of Review set forth the purpose of the proviso in Article of War 8 which required that when an appointing authority is the accuser or prosecutor of the person or persons to be tried the court shall then be appointed by a superior competent authority. The Board of Review explained the purpose of the proviso, quoting from an earlier opinion of the Attorney General, as being to

> ... guard against results which would not be in harmony with a proper sense of justice, and which might ensue if the officer by whom the charge is made, and who is interested in the issue, were permitted to detail the members of the court which is to try the accused, the danger being that such officer, under the influence of a strong feeling against the accused, might select those who are hostile

to the latter or unduly biased in his own favor, and who, for that reason, would be less able to render a fair judgement in the case ... (Citation omitted.)

The first draft of the bill, which was later to become the Uniform Code of Military Justice, then before a subcommittee of the House of Representatives Committee on Armed Services in 1949 for hearings, defined an "accuser" in Article 1(11) as "a person who signs and swears the charges and any other person who has an interest other than an official interest in the prosecution of the accused." *See Hearings on H.R. 2498 Before a Subcommittee of the House Committee on Armed Service*, 81st Cong., 1st Sess. 850 (1949).

During the hearings on H.R. 2498, one of the witnesses testified that the draft of Article 1(11) omitted the commander who orders the subordinate to prefer charges from the definition of who would be an accuser. He stated that such a commanding officer was so defined as an accuser in the present Manual for Courts–Martial but H.R. 2498 "leaves him out". He went on to note that the present manual for courts-martial provides, "regardless of the question of personal bias, if he orders a lower officer, a subordinate, to prefer charges, he should not sit on the court and he should not convene court." Under H.R. 2498 that commanding officer could do both. H.H. 810 and 816. According to him, no change in the present procedure outlined in M.C.M., 1949, should be made because anything that is liable to "detract from the accused getting a fair, impartial trial is to be carefully avoided." He further testified that the reason for the prohibition was obvious, stating:

> The one convening and appointing the court should be unbiased and if the commanding officer orders the subordinate to prefer charges, he has formed more or less views upon the guilt or innocence of the accused.

As a result of the hearings conducted by the subcommittee into H.R. 2498, amendments to the bill were made by the committee and H.R. 2498 was reintroduced to the full committee as H.R. 4080. One of the amendments to H.R. 2498 incorporated into H.R. 4080 affected Article 1(11) and the definition of an accuser therein. The definition then included that person who directs that charges be nominally signed and sworn by another as well as those other persons originally defined in H.R. 2498 as accusers. It then became the definition of an accuser in Article 1(11) of the Act of 5 May 1950, enacting and establishing the Uniform Code of Military Justice.[6]

■ We hold that General Baker directed Colonel Brunetti to nominally sign and swear to the charges against appellant and, therefore, was the accuser in the case as defined in Article 1(9). We also hold that, as accuser, General Baker should not have referred the charges to trial but should have forwarded the charges to his superior competent authority for that authority's determination as to whether the convening of a general court-martial was appropriate in appellant's case. Article 22(b), U.C.M.J.

It is clear from the testimony of Colonel Brunetti that he preferred charges against appellant because of his belief that General Baker directed him to do so and not because he thought that it was an appropriate way to dispose of the charges. According to his trial testimony, he preferred the charges in the case because he was told by Major Roberts that General Baker had decided there would be a court-martial and that General Baker had directed him as Captain Shelton's supervisor to prefer the charges and that he did so because he was so directed. Lending support to the view that General Baker was directing the pretrial processing of the case is trial testimony of Colonel Plescha. According to him, when he forwarded the report of investigation along with the preferred charges to General Baker, he did so with his recommendation that the charges be tried by a general court-martial. This recommendation as to the type of trial was made by him

---

**6.** Article 1 was codified in 50 U.S.C. § 551 which was repealed 10 August 1956, effective 1 January 1957, and Article 1 was then recodified in 10 U.S.C. § 801. One result was that clauses (1), (2), and (5) were omitted from Article 1 as respectively covered in clauses (4), (6), and (14) of that Article. Also as a result, the definition of "accuser", formerly set forth in clause (11), is now set forth in clause (9) of Article 1.

to reflect what he thought the desires of his "boss" were and did not manifest an exercise of his discretion in the matter. We are unable to agree with the finding made at trial by the military judge that the actions taken by both Colonels Brunetti and Plescha concerning the charges were discretionary and "not controlled by [General Baker]" because the evidence simply does not support it. However, we do agree with the part of this finding where the military judge states their actions were taken "with high regard for the expressed intent of Major General Baker to dispose of the case by court-martial".[7]

By directing Colonel Brunetti to nominally sign and swear to the charges against appellant, General Baker was disqualified from acting as convening authority in the case. By ordering the charges preferred and then ordering the charges tried by general court-martial an aura of personal bias against the appellant was created indicating he had formed, more or less, views concerning the guilt or innocence of the appellant. This is precisely what Articles 1(9) and 22(b) were intended to avoid. *United States v. Corcoran, supra; United States v. Smith, supra; Hearings on H.R. 2498 Before a Subcommittee of the House Committee on Armed Service*, 81st Cong., 1st Sess. 850 (1949). *Cf. United States v. Wharton*, 33 C.M.R. 729 (A.F.B.R.1963). As a result, the general court-martial which tried and convicted appellant was without jurisdiction to do so as it was convened by a person not empowered to convene it. R.C.M. 201(b)(1). Accordingly, the approved findings of guilty and the sentence are set aside. In view of our disposition of this assigned error, we do not find it necessary to comment on the remaining assignments of error submitted by appellant. A rehearing may be ordered by a convening authority empowered to do so.

Judges MICHALSKI and MURDOCK concur.

---

7. Neither General Baker nor Major Roberts testified at trial with regard to this matter.